# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| BEYOND BATTEN DISEASE FOUNDATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 4:16-cv-00258-FJG ) |
| THE CHILDREN'S MERCY HOSPITAL; STEPHEN F. KINGSMORE; DARRELL L. DINWIDDIE; and NEIL A. MILLER, | ) ) ) ) ) |
| Defendants. | ) |

**ORDER**

Pending before the Court is defendants' motion to dismiss (Doc. No. 7).

**I.    Background**

Plaintiff Beyond Batten Disease Foundation (hereinafter "BBDF") brought suit against defendant Children's Mercy Hospital (hereinafter "CMH"), Stephen F. Kingsmore, Darrell L. Dinwiddie, and Neil A. Miller (employees of CMH) asserting three causes of action: Claim one for unjust enrichment; Claim two for tortious interference; and Claim three for conversion of intellectual property. BBDF is pursuing all of these claims under Missouri law.

BBDF is a 501(c)(3) non-profit charitable foundation located in Texas and formed under the laws of Texas. BBDF's mission is to eradicate Batten disease (a rare genetic, neurodegenerative condition). BBDF wanted to commercialize a rare disease genetic test. In order to do so, it decided to partner with National Center for Genome Resources (hereinafter "NCGR") based in New Mexico. BBDF funded the research for NCGR to

develop the test. Defendants Stephen F. Kingsmore (hereinafter "Kingsmore"), Darrell L. Dinwiddie (hereinafter "Dinwiddie"), and Neil A. Miller (hereinafter "Miller") were on the research team at NCGR. BBDF had an agreement with NCGR that BBDF retained the intellectual property that resulted from the project.

BBDF needed a partner to help them commercialize the genetic test. With Kingsmore's assistance, BBDF started negotiating with CMH about a joint venture to use the genetic test. CMH planned to open a pediatric genome center. In January 2011, CMH decided to hire Kingsmore, Dinwiddie, and Miller away from NCGR to work on the pediatric genome center CMH was developing. CMH and BBDF continued negotiations regarding collaborating on commercializing the diagnostic genetic test. CMH opened their pediatric genome center in October of 2011. In November 2012, CMH sent BBDF a Contribution Agreement to essentially buy BBDF out of any future commercialization of the genetic testing device.

During the same time that BBDF was negotiating with CMH to commercialize the test, it was also negotiating with LabCorp and Sonic Healthcare (other diagnostic companies). Both LabCorp and Sonic Healthcare terminated negotiations with BBDF. LabCorp ceased the negotiations in 2012. Sonic Healthcare ceased its negotiations in August 2014. CMH is currently operating their pediatric genome center and allegedly using intellectual property owned by BBDF to conduct testing.

**II.    Standard**

When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept the plaintiff's factual allegations as true, construing them in the light most favorable to the plaintiff. <u>Patterson Oil Co. v. VeriFone, Inc</u>., No. 2:15-cv-4089, 2015 U.S. Dist.

LEXIS 141635, at *9 (W.D. Mo. Oct. 19, 2015) (citing Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008)). Fed. R. Civ. P. 8(a)(2) states that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, (2007)). In order for a claim to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-678 (2009).

Missouri's borrowing statute, Mo. Rev. Stat. § 516.190, provides that "[w]henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Usually, "the possible existence of a statute of limitations defense is not ordinarily grounds for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Nelson v. Bitters, No. C15-4077-CJW, 2016 U.S. Dist. LEXIS 35020, *17 (N.D. Iowa Mar. 18, 2016) (quoting Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011) (quoting Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008))). However, "when it 'appears from the face of the complaint itself that the limitations period has run,' a [statute of] limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." Nelson v. Bitters, No. C15-4077-CJW, 2016 U.S. Dist. LEXIS 35020, *17 (N.D. Iowa Mar. 18, 2016) (quoting Wycoff v. Menke, 773 F.2d 983, 984-85 (8th Cir. 1985)). The purpose of the borrowing

statute is "primarily to prevent a plaintiff from forum shopping for a statute of limitations. The statute prevents a plaintiff from gaining more time to bring an action merely by suing in a forum other than where the cause of action accrued." Natalini v. Little, 185 S.W.3d 239, 241 (Mo. Ct. App. 2006).

## III. Discussion

Defendants move to dismiss BBDF's claims with prejudice, alleging that BBDF's claims are barred under Missouri's borrowing statute since the claims each have a two year statute of limitation in Texas. Although Missouri has a five year statute of limitations for the types of claims presented by plaintiff, defendants assert that Missouri's statute of limitations does not apply because BBDF's claims originated in Texas and BBDF is claiming purely economic harm.

Plaintiff BBDF argues that BBDF was not exclusively injured in Texas and the case has a strong enough connection to Missouri for the Missouri statute of limitations to apply. BBDF also asserts that CMH's continued use of the genetic test is a continuing tort, and therefore the statute of limitations has not run. BBDF further claims that without discovery, there are too many unknown facts to determine whether the statute of limitation has run. BBDF also asks that it be granted leave to amend its complaint if the Court finds in favor of CMH, instead of dismissing the action with prejudice.[1]

In looking at the facts in the light most favorable to the plaintiff, the Court must determine how to apply Missouri's borrowing statute. "[T]he 'critical issue' in applying the borrowing statute 'is determining where a cause of action originated.'" Morley v.

---

[1] The Court denies this request, as plaintiff did not attach a proposed amended complaint to its response to the motion to dismiss.

4

Square, Inc., No. 4:14cv172, 2014 U.S. Dist. LEXIS 147476, *7 (E.D. Mo. Oct. 16, 2014) (quoting Great Plains Trust Co. v. Union Pac. R. Co., 492 F.3d 986,992 (8th Cir. 2007). To determine where the cause of action originated, the Court looks at (1) where the plaintiff sustained damage and (2) where the damage was "capable of ascertainment." Hildene Opportunities Master Fund Ltd v.Arvest Bank, No. 14-1110-cv-W-ODS, 2016 U.S. Dist. LEXIS 8117 (W.D. Mo. Jan. 25, 2016). "[D]amages are 'sustained and capable of ascertainment' when the fact of damage can be discovered or made known." Morley v. Square, Inc., No. 4:14-cv-172, 2014 U.S. Dist. LEXIS 147476, *7 (E.D. Mo. Oct. 16, 2014) (quoting Jordan v. Willens, 937 S.W.2d 291, 294 (Mo. App. W.D. 1996)). "[F]or cases involving a purely economic injury, as opposed to a physical accident with economic consequences, a cause of action originates where the plaintiff is financially damaged." Morley v. Square, Inc., No. 4:14cv172, 2014 U.S. Dist. LEXIS 147476, *7 (E.D. Mo. Oct. 16, 2014) (quoting Great Plains Trust Co. v. Union Pac. R. Co., 492 F.3d 986,993 (8th Cir. 2007)). "Accordingly, Missouri's borrowing statute bars an action if (1) the action originated in another state and (2) the other state's statute of limitations bars the action." Id. at *7 (citing Alvarado v. H & R Block, Inc., 24 S.W. 3d 236, 241-42 (Mo. Ct. App. 2000)).

### A.  BBDF sustained economic damage in Texas.

The Court must determine where the causes of action originated. The first step for the Court is to determine where BBDF sustained damage. Since BBDF sustained purely economic injury, the Court will focus on where the plaintiff was financially damaged. BBDF is located in Texas. Although BBDF hired the individuals in New Mexico and those employees were later hired by CMH in Missouri, BBDF had its main

5

operation and employees in Texas. BBDF is a non-profit located in and abiding by Texas law. Therefore, Texas is where BBDF's financial damage will occur.

BBDF attempts to argue that its injuries are not exclusive to Texas, noting that it only has four employees in Texas, and most of the money it earns it distributed to various research projects in the United States and Europe. While that may be true, Missouri rejects plaintiff's multiple origins theory because "it ignores the forum shopping consequences which borrowing statutes were designed to eliminate." Patch v. Playboy Enterprises, Inc., 652 F.2d 754, 757 (8th Cir. 1981) (holding that the plaintiff's "suggestion that [it] adopt a most significant contacts test for determining where his cause of action originated is without support in Missouri law." (citing Trzecki v. Gruenewald, 532 S.W.2d 209, 211-12 (Mo.1976))). In Patch, the court held that plaintiff's libel claim originated in Illinois even though the plaintiff's injury could be felt in multiple jurisdictions. Id. at 757. Although BBDF cited Bldg. Erection Servs. v. JLG,Inc., 376 F.3d 800 (8th Cir. 2004) to support its theory that an organization can feel the effect of its damages in multiple places, that case focuses on a physical injury precipitating the economic damage as opposed to purely economic injury. Therefore, it is distinguishable from the present matter. BBDF's claims allege purely economic damages so the claim originates at its non-profit headquarters in Texas.

> **B. BBDF's injury was capable of ascertainment in Texas.**

For similar reasons as stated above, BBDF's injury was capable of ascertainment in Texas. The point of the borrowing statute is to dissuade plaintiffs from forum shopping for a more favorable statute of limitation by suing in a forum other than where the original claim originated. Just because certain defendants are located in

Missouri does not mean that the injuries were not capable of ascertainment in Texas. When BBDF knew (or should have known) that it was damaged because of defendants' actions, the statute of limitation clock for Texas started ticking because that is where BBDF resides.

The Court will now look at the statute of limitation for each claim and determine whether the claim is barred by the appropriate Texas statute of limitations.

### 1. Claim one for unjust enrichment

BBDF's first claim is for unjust enrichment under Missouri law, however, the Texas statute of limitation applies because of the Missouri borrowing statute. A Texas unjust enrichment claim ("taking or detaining the personal property of another") must be filed "not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003(a). Texas follows the "legal injury test" to determine when the time period for an unjust enrichment claim accrues "and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." Mayo v. Hartford Life Ins. Co., 354 F.3d 400, 402 (5th Cir. 2004). Using the legal injury test, the statute of limitations "accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." Murphy v. Campbell, 964 S.W.2d 265, 270 (Tex. 1997). The legal injury rule has an exception because "sometimes an action does not accrue until the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury. This exception, which courts call the "discovery rule," applies in cases of fraud and fraudulent concealment, and in other cases in which the nature of the injury incurred is inherently undiscoverable and the

7

evidence of injury is objectively verifiable." Id. at 267. "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." Id. at 267.

BBDF's unjust enrichment claim states that Kingsmore knowingly induced BBDF to continue funding his research at NCGR and subsequently colluded with CMH to benefit himself rather than BBDF. Doc. No. 1, ¶ 70-74. The legal injury would be considered the moment that CMH "appropriated the test and turned it into its own exclusive operation." Doc. No. 1, ¶ 76. CMH then "accept[ed] and retain[ed] the benefits of the test without compensating BBDF." Doc. No. 1, ¶ 78. On October 11, 2011, BBDF knew that CMH launched its Center for Pediatric Genomic Medicine; Kingsmore stated that the test would be launched in November 2011. Doc. No. 1, ¶ 52. BBDF states that by October 2013, BBDF was not being acknowledged for the creation of the test. Doc. No. 1, ¶ 54. By November 2012, CMH was trying to buy BBDF out of the genetic test that was created. Doc. No. 1, ¶ 56. By September 2013, CMH announce the creation of its Targeted Gene Sequencing Custom Analysis test which BBDF claims would not have been possible without BBDF. Doc. No. 1, ¶¶ 57-58.

Through reasonable diligence, BBDF should have realized that it was suffering damages by November 2012, when CMH was trying to buy BBDF out of the creation of the genetic test and future profits from commercialization of the genetic test. BBDF knew the situation was not going well because they were being offered "paltry payments." Although all possible damages may not have been discovered, by that point in time plaintiff should have been able to foresee economic damage.

8

The lawsuit was filed on March 24, 2016. By November of 2012 BBDF should have discovered that there were enough facts to seek a judicial remedy. The statute of limitations expired, therefore, in November 2014, making this suit well over a year late. Therefore, plaintiff's first claim must be dismissed.

### 2. Claim two for tortious interference

The Texas statute of limitation for a tortious interference claim is also two years. Tex. Civ. Prac. & Rem. Code § 16.003(a). A claim for tortious interference accrues when "existing negotiations, which are reasonably certain of resulting in a contract, are interfered with such that the negotiations terminate and harm to the plaintiff results." Hill v. Heritage Resources, 964 S.W.2d 89, 101 (Tex. App. El Paso 1997).

BBDF's claim of tortious interference is based on its allegation that, due to CMH appropriating the genetic test and eliminating BBDF's participation in the commercial development of the test, LabCorp and Sonic Healthcare ceased negotiation with BBDF to possibly commercialize the test. Doc. No. 1, ¶¶ 80-81. The appropriation of the test also prevented BBDF from working with other laboratories to commercialize the test which prevented BBDF from realizing revenue from the test. Doc. No. 1, ¶¶ 82-83.

BBDF held separate negotiations with LabCorp and Sonic Healthcare. Negotiations with LabCorp ended in August 2012. Doc. No. 1, ¶ 65. Negotiations with Sonic Healthcare formally terminated in August 2014. Doc. No. 1, ¶ 66. Since negotiations with LabCorp ceased in 2012, plaintiff's tortious interference claim is untimely under Texas law. With respect to the Sonic Healthcare negotiations, however, the Court finds that the motion to dismiss must be denied, as since negotiations ceased

9

in August 2014, it is possible that BBDF's tortious interference claims in timely under Texas law.

### 3.     Claim three for conversion of intellectual property

The Texas statute of limitation for a conversion of intellectual property claim is two years because it "begins to run, at the time of the unlawful taking." Manos v. Hawk, No. 14-cv-1128-P-BN, 2015 U.S. Dist. LEXIS 50827, *16-17 (N.D. Tex. Feb. 27, 2015) (citing Ortega v. Young Again Prods., Inc., 548 F. App'x 108, 112 (5th Cir. Nov. 27, 2013) (quoting Pipes v. Hemingway, 358 S.W.3d 438, 450 (Tex. App. — Dallas 2012, no pet.))).

BBDF's conversion claim states that it owned and had sole legal rights to the "764 Patent Application" and associated intellectual property necessary to formulate the test. Doc. No. 1, ¶ 87. BBDF alleges it owned and had the sole legal right to the trade secrets, genetic tests, sequence data, and various genetic schemes for many genetic mutations. Id. BBDF claims that CMH exercised control over the test in a manner that ousted BBDF of its rights and refused to return the property at issue and has deprived BBDF of any revenues generated from using its intellectual property. Doc. No. 1, ¶ 88-89.

This taking that BBDF is referring to would have occurred when CMH started using the test. According to the facts stated above for claim one, the latest that BBDF should have known that the test was being used by CMH was in November 2012 when CMH tried to buy out BBDF from the future commercialization of the test. Even if the Court attempted to be generous, by September 2013 when CMH announced the

10

Case 4:16-cv-00258-FJG   Document 31   Filed 07/28/16   Page 10 of 12

creation of its Targeted Gene Sequencing Custom Analysis test, the plaintiff should have known it have known it had a claim for relief from the Court.

The lawsuit was filed on March 24, 2016. By November of 2012 (or, by the latest, September 2013) BBDF should have known it had a claim for relief.  Therefore, the lawsuit is barred by Texas' two year statute of limitation for conversion of intellectual property.

BBDF argues that the continuing tort doctrine applies to its claim for conversion of intellectual property claim. Doc. No. 26, ¶ 21. BBDF states that the continuing tort doctrine applies because CMH continues to use the intellectual property of BBDF at the pediatric genome center. Texas law differentiates between "1) repeated injury proximately caused by repetitive wrongful or tortuous acts and 2) continuing injury arising from one wrongful act." Rogers v. Veigel Inter Vivos Trust No. 2, 162 S.W.3d 281, 284 (Tex. App. Amarillo 2005). For repeated injury caused by repetitive wrongful acts, the continuing tort doctrine applies, but for continuing injury from one wrongful act, the continuing tort does not apply. Id. at 284. "For instance, a continuing tort does not arise from one's copyrighting a song that another wrote and then repeatedly selling the song and reaping profit from each sale. While it may be said that the injury continues with each sale and receipt of a royalty, the act that caused the continuing injury was the one act of copyrighting the song." Id. at 284. In BBDF's case, CMH allegedly stole one genetic test and all the sequence data, and various genetic schemes that came with the test.  Although it may repeatedly use that test, however, the continuing tort would not apply because like the song, the test was allegedly only stolen once. Although CMH allegedly continues to profit from the sale of the test, the act that allegedly caused the

11

continuing injury was appropriating the genetic test from BBDF. Therefore, the continuing tort doctrine does not apply, and the statute of limitations has run on plaintiff's conversion claim.

## IV. Conclusion

Therefore, for the foregoing reasons, defendant's motion to dismiss (Doc. No. 7) is **GRANTED IN PART** and **DENIED IN PART.** Claim 1 (unjust enrichment) and Claim 3 (conversion of intellectual property) are **DISMISSED WITH PREJUDICE**. Claim 2 (tortious interference) is **DISMISSED IN PART** as to claims related to tortious interference with LabCorp, but plaintiff will be allowed to proceed on its claim against defendants related to tortious interference with the Sonic Healthcare negotiations.

**IT IS SO ORDERED.**

/s/Fernando J. Gaitan, Jr.
Fernando J. Gaitan, Jr.
United States District Judge

Dated: July 28, 2016